UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRUCE SCOTT,

                              Plaintiff,

                                                                                   9:09-CV-0782
v.                                                                           (NAM/GHL)

R. ROUX, ROZANSKI, SGT. ZIEGLER,
ROBERT TOWLES,

                              Defendants.
_____

APPEARANCES:                                                    OF COUNSEL:

BRUCE SCOTT
Plaintiff *pro se*
Feimster Memorial Building
ARC
2015 Madison Avenue
New York City, NY 10035

HON. ANDREW M. CUOMO                          RICHARD LOMBARDO, ESQ.
Attorney General for the State of New York
  Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Bruce Scott alleges that Defendants used excessive force on him and denied him medical care. Currently pending before the Court is the motion of Defendants Roux, Ziegler, and

Towles[1] to dismiss the amended complaint for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6). (Dkt. No. 32.) For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

I.   BACKGROUND

Plaintiff alleges that on March 21, 2009, he was in the mess hall at Watertown Correctional Facility. He was putting a tissue in his pants pocket when Defendant Correctional Officer R. Roux grabbed him by his sweater and walked him from the mess hall table to the entrance door, holding his "face in the wall" roughly. Defendant Roux called for other officers. (Dkt. No. 14 at 7.)

Two officers arrived, handcuffed Plaintiff, pulled him roughly to a different location, and began beating him. *Id*. When Plaintiff yelled at them to stop, one of the officers ran away while the other held him "in an aggressive manner" and walked him to the SHU behind Defendant Sergeant Rozanski, hitting Plaintiff the entire way. *Id*. The body of the complaint does not name the escorting officer, but an attachment to the complaint shows that Defendant Officer Towles "escorted [Plaintiff] to SHU for admission" with Defendant Rozanski. (Dkt. No. 14 at 16.) I will therefore refer to this officer as Defendant Towles.

When they reached the SHU building, Defendant Towles placed Plaintiff face-first on the wall and continued beating him. (Dkt. No. 14 at 7-8.) Plaintiff yelled for help. An officer grabbed him by the throat and told him to "shut the fuck up." (Dkt. No. 14 at 8.) When the SHU door opened, Defendant Towles dragged Plaintiff into the search room, slammed him into the wall, and continued to beat him. *Id*. Plaintiff's right eye was bleeding, both sides of his face

---

[1]   Defendant Rozanski has answered the complaint. (Dkt. No. 33.)

2

were swollen, his right eye was cut, his vision was blurry, and there was blood on the wall. *Id*. When he saw the blood, Defendant Towles told Plaintiff to place his cuffed hands high on the wall. The officers uncuffed Plaintiff and strip-searched him. *Id*. Thereafter, Plaintiff remained on the wall, naked and bleeding, for twenty minutes. *Id*. During this time, an officer wiped the blood off the wall and threatened Plaintiff. *Id*.

After twenty minutes, a doctor arrived. *Id*. He asked Plaintiff if he was all right and then left. (Dkt. No. 14 at 9.) The officers took pictures of Plaintiff's injuries. *Id*. Plaintiff was recuffed and the officers prepared to take him to his cell. *Id*. As they were doing so, Defendant Rozanksi entered the room and ordered Plaintiff not to complain, stating that if Plaintiff did they would "do the same thing to [him] again." (Dkt. No. 14 at 9.)

Defendant Towles escorted Plaintiff to his cell. Another officer was placed outside Plaintiff's cell to "watch [his] mental state." (Dkt. No. 14 at 9.) Plaintiff told the watch officer that he needed to see a doctor because his right eye was bleeding. The officer "just sat there." Plaintiff remained in the cell for ten days without medical attention. *Id*. On each of these days, Plaintiff was "threatened by new officers." (Dkt. No. 14 at 10.)

Defendant Roux wrote a misbehavior report charging Plaintiff with disturbing the order of the facility, disobeying a direct order, and failing to comply with frisk procedures. (Dkt. No. 14 at 17.) Defendant Towles wrote a misbehavior report charging Plaintiff with disobeying a direct order and engaging in violent conduct. (Dkt. No. 14 at 16.)

On April 2, 2009, Plaintiff was taken to the Mid-State Correctional Facility medical unit and placed in the mental health SHU. (Dkt. No. 14 at 10.) Plaintiff informed the Director of Mental Health about what had happened to him at Watertown Correctional Facility. *Id.* A nurse

gave him pain medication. *Id*. Then a Mid-State sergeant confronted Plaintiff about the Watertown incident. Plaintiff explained his side of the story. The sergeant and another officer escorted Plaintiff to the clinic, where a nurse gave him a complete examination. *Id*. An officer came into the examination room and took photographs of Plaintiff. *Id*. Afterward, Plaintiff got dressed and filled out a complaint. *Id*.

A Watertown officer picked up Plaintiff from the mental health SHU cell and threatened and harassed Plaintiff and said he was going to destroy Plaintiff's personal property. *Id*. Plaintiff told the officer he wanted a sergeant review. The Watertown officer got upset, threw Plaintiff's property around the room, and placed Plaintiff back in the cell.[2] (Dkt. No. 14 at 10-11.) The officer then told Plaintiff he was going to take him to a disciplinary hearing.[3] (Dkt. No. 14 at 11.) Defendant Ziegler then began reading Plaintiff's mail. *Id*. When Plaintiff returned from the hearing, his cell was "completely destroyed" and two of his personal letters were missing. *Id*. Plaintiff reported this to Defendant Ziegler, who "lie[d] [and] stat[ed] he kn[e]w nothing about the letters." (Dkt. No. 14 at 11.) Plaintiff informed the SHU counselor about the incident. *Id*. Defendant Ziegler then started threatening Plaintiff. *Id*.

Plaintiff alleges that he suffers pain, vision problems, back pain, and heart problems as a result of Defendants' conduct. (Dkt. No. 14 ¶ 7.)

---

[2]   The complaint does not clearly identify this officer. The officer may or may not be Defendant Ziegler, who is identified by name later on the same page.

[3]   At the hearing, Plaintiff was sentenced to 90 days. *Id*. This was later reversed. (Dkt. No. 14 at 11, 15.)

## II.   LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

### III. ANALYSIS

#### A. Denial of Medical Care

Plaintiff alleges that Defendants failed to provide him with medical care. (Dkt. No. 14 at ¶ 7.) Defendants Roux, Ziegler, and Towles argue that Plaintiff has failed to state an Eighth Amendment medical care cause of action against them. (Dkt. No. 32-1 at 6-9.) Defendants are correct.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle*, 429 U.S. at 102. Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care. *Farmer*, 511 U.S. at 832 (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

There are two elements to a prisoner's claim that prison officials violated his Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable

state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted), *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698*,* 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702-03.

Here, Plaintiff alleges that his right eye was cut and bleeding, that both sides of his face were swollen, and that his vision was blurry. (Dkt. No. 14 at 8.) These are arguably injuries that a reasonable doctor or patient would find important and worthy of comment or treatment. *See Ellis v. Guarino*, No. 03 Civ. 6562, 2004 U.S. Dist. LEXIS 16748, 2004 WL 1879834, at *11 (S.D.N.Y. Aug. 24, 2004) ("When Plaintiff arrived at the SHU followed the alleged attacks . . . he allegedly had swelling on his face, contusions in both ears and on his forehead, abrasions on his shoulder, a one millimeter laceration in his right eye, and suffered from blurred vision, headaches, dizziness and ringing in his ears, the latter two of which continued for several days thereafter . . . Such injuries clearly constitute a serious medical condition for Eighth Amendment purposes."). I will assume, for the purposes of this motion only, that Plaintiff has adequately alleged that he suffered from a serious medical condition.

Even assuming that Plaintiff suffered from a serious medical need, the complaint does not

allege facts plausibly suggesting that Defendants Roux, Ziegler, or Towles were deliberately indifferent to that need. Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d, 698, 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "Non-medical personnel engage in deliberate indifference where they intentionally delay[] access to medical care when the inmate [i]s in extreme pain and has made his medical problem known to attendant prison personnel." *Baumann v. Walsh*, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999). Nothing in the complaint indicates that Defendants Roux or Ziegler ever saw or were informed of Plaintiff's alleged injuries. Plaintiff does not allege that Defendant Roux harmed him and he alleges that the other officers moved him away from the mess hall and to a different area before they began beating him. (Dkt. No. 14 at 7.) The complaint does not allege that Defendant Ziegler saw Plaintiff until sometime after Plaintiff returned to Watertown Correctional Facility approximately two weeks after the alleged excessive force incident. (Dkt. No. 14 at 11.) Thus, the complaint does not allege facts plausibly suggesting that Defendants Roux or Ziegler were deliberately indifferent to Plaintiff's serious medical needs.

     As for Defendant Towles, the complaint alleges that either he or one of the other officers who allegedly beat Plaintiff called for a doctor, who arrived about twenty minutes after the alleged incident. (Dkt. No. 14 at 9.) Thus, the complaint does not allege facts plausibly suggesting that Defendant Towles intentionally delayed Plaintiff's access to medical care. Therefore, I recommend that the Court dismiss Plaintiff's Eighth Amendment medical care claims against Defendants Roux, Ziegler, and Towles.

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). Of course, an opportunity to amend is not required where the plaintiff has already amended the complaint. *See Advanced Marine Tech. v. Burnham Sec .,Inc.*, 16 F. Supp. 2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once). Here, Plaintiff has already amended his complaint once. Therefore, I recommend that the Court dismiss the claim with prejudice.

### B. Excessive Force Claim Against Defendant Roux

Defendants argue that the complaint fails to state a claim against Defendant Roux. (Dkt. No. 32-1 at 9-11.) Defendants are correct.

Plaintiff alleges that Defendant Roux used excessive force on him. (Dkt. No. 14 ¶ 7.) When prison officials are "accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The extent of any injury suffered by the inmate "is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation or instead evinced such wantoness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Id.* at 7 (citation and quotation marks omitted).

> In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the

> threat reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response. The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it.

*Id.* (citation and quotation marks omitted). In other words, not "every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and usual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9.

Here, Plaintiff alleges that Defendant Roux grabbed him by his sweater and walked him from the mess hall to the door, holding his "face to the wall" roughly. (Dkt. No. 14 at 7.) Plaintiff does not allege that he was injured as a result of Defendant Roux's conduct. This *de minimis* use of force is not of the sort repugnant to the conscience of mankind. Therefore, I recommend that the Court dismiss the excessive force claim against Defendant Roux with prejudice.

    **C.**    **Claims Against Defendant Ziegler**

Plaintiff claims that Defendant Ziegler read his mail, stole two of his letters, lied about stealing the letters, and started threatening Plaintiff "after finding out I have a grievance written on him." (Dkt. No. 14 at 11.) The complaint may also allege that Defendant Ziegler threw Plaintiff's property around his cell, although it is not clear from the context whether this allegation is against Defendant Ziegler or an unnamed officer. (Dkt. No. 14 at 10-11.) Defendants argue that the complaint fails to state a cause of action against Defendant Ziegler. (Dkt. No. 32-11 at 13-14.) Defendants are correct.

As Defendants correctly note, the allegations in the complaint regarding the treatment of Plaintiff's property and the reading of his mail do not state a cause of action against Defendant Ziegler. Confiscation of an inmate's property does not constitute a due process violation because adequate post-deprivation remedies are available to inmates through prison grievance procedures and in state court. *Koel v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996). As to the reading of the mail, Plaintiff does not allege that he was prevented from either sending or receiving mail. It therefore appears that he is attempting to assert a privacy claim rather than a First Amendment claim. Prisoners have no right to privacy in their cells. *Hudson v. Palmer*, 468 U.S. 517 (1984). Therefore, I recommend that the Court dismiss these claims.

As Defendants correctly note, the mere use of threatening language is not actionable under 42 U.S.C. § 1983. "It is well established that mere threatening language and gestures of a custodial officer do not ... amount to constitutional violations." *Alnutt v. Cleary*, 913 F. Supp. 160, 165 (W.D.N.Y. 1996) (punctuation omitted). Therefore, to the extent that Plaintiff's claim against Defendant Ziegler is premised solely on Defendant's use of threatening language, I recommend that it be dismissed.

Read broadly, the complaint may allege that Defendant Ziegler threatened Plaintiff in retaliation for Plaintiff filing a grievance against him. Defendants have not addressed this claim.

Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *See Gill*, 389 F.3d at 381-383. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such

retaliation claims with particular care.  *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

As the Second Circuit has noted,

> [t]his is true for several reasons.  First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated.  Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prevail on a retaliation claim under 42 U.S.C. § 1983, a plaintiff must prove by the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 [2d. Cir. 2001]).

The complaint alleges facts plausibly suggesting that Plaintiff was engaged in protected conduct because Plaintiff alleges that he filed a grievance against Defendant Ziegler.  (Dkt. No. 14 at 11.)  The filing of a grievance against prison officials is constitutionally protected conduct.  *Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir. 2003);  *Graham v. Henderson,* 89 F.3d 75, 80 (2d

Cir. 1996).  However, the complaint does not allege facts plausibly suggesting that Defendant Ziegler took adverse action against Plaintiff.

> Under some circumstances, verbal threats may constitute adverse action, depending on their degree of specificity and the context in which they are uttered. *See, e.g., Hepworth v. Suffolk County*, No. 2:02-cv-6473, 2006 WL 2844408, at *8-9 (E.D.N.Y. Sept. 29, 2006) (denying summary judgment where "continued verbal threats" that inmate "would receive another beating or be killed" was sufficient "evidence ... such that a reasonable jury could find that the officers unconstitutionally retaliated against [inmate] ... for exercising his First Amendment" rights). Thus, vague intimations of some unspecified harm generally will not rise to the level of adverse action for the purpose of a First Amendment retaliation claim. *See, e.g., Bartley v. Collins*, No. 95 Civ. 10616, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (stating that "verbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action") (citing *Dawes*, 239 F.3d at 493, for the proposition that "[n]ot every unnecessary statement of a prison guard regarding an inmate's exercise of free speech violates the First Amendment")*; Alicea v. Howell*, 387 F. Supp.2d 227, 237 (W.D.N.Y.2005) (defendant's "alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance against [defendant] d[id] not give rise to a First Amendment retaliation claim"); *Cruz v. Hillman*, No. 01 Civ. 4169, 2002 WL 31045864, at *7 (S.D.N.Y. May 16, 2002) (allegation that defendant made statement which "expressed his dislike for inmates who file civil lawsuits, and later came to plaintiff's cell and said 'Green Haven is an open battlefield, so be careful' " was insufficient to state retaliation claim).

*Bumpus v. Canfield*, 495 F. Supp. 2d 316, 326 (W.D.N.Y. 2007) (allegation that correctional officer "chastised" prisoner and said that he was "getting tired of" prisoner filing grievances insufficient to state a retaliation claim).  Here, Plaintiff alleges merely that Defendant Ziegler "start[ed] threatening me."  (Dkt. No. 14 at 11.)  This is an insufficiently specific allegation to plausibly suggest that Defendant Ziegler took adverse action against Plaintiff.  Therefore, I recommend that the Court dismiss Plaintiff's claims against Defendant Ziegler with prejudice.

### D.     Excessive Force Claim Against Defendant Towles

Plaintiff's allegations against Defendant Towles are not clearly drafted.  As mentioned above, the body of the complaint alleges that unnamed officers or "Units 16-17" arrived when summoned by Defendant Roux, that one of these officers escorted Plaintiff to the SHU with Defendant Rozanski (beating him the entire way), and that this officer continued to beat Plaintiff in the search room.  (Dkt. No. 14 at 7-8.)  A misbehavior report attached to the complaint, signed by Defendant Towles, states that "C.O. Towles escorted Inmate Scott . . . to SHU for Admission.  Scott was escorted to SHU frisk room by myself and Sgt. Rozanski."  (Dkt. No. 14 at 16.)  I find, therefore, that the complaint alleges that Defendant Towles subjected Plaintiff to excessive force.

Defendants argue that "the complaint contains no allegations of any conduct whatsoever engaged in, let alone constitutional violations committed by, [D]efendant Towles."  (Dkt. No. 32-1 at 12.)  Therefore, they argue, any claims against Defendant Towles should be dismissed.  *Id*. at 13-14.  However, given that the attachment to the complaint identifies Defendant Towles as the officer who beat Plaintiff, I find that the complaint states an Eighth Amendment excessive force cause of action against him.  Therefore, I recommend that the Court deny Defendants' motion to dismiss the excessive force claim against Defendant Towles.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 32) be **GRANTED IN PART AND DENIED IN PART**.  I recommend that the Court dismiss the following claims with prejudice: (1) the Eighth Amendment medical care claims against Defendants Roux, Ziegler, and Towles; (2) all claims against Defendant Roux; and (3) all claims against Defendant Ziegler.  I recommend that the Court direct Defendant Towles to

answer the Eighth Amendment excessive force claim against him. I note that Defendant Rozanski concedes that the complaint states a failure-to-intervene claim against him (Dkt. No. 32-1 at 2 n.2 ) and has answered the complaint (Dkt. No. 33).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: May 21, 2010
       Syracuse, New York

*/s/ George H. Lowe*
George H. Lowe
United States Magistrate Judge